**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KEITH ALLAN WINFIELD,
       Petitioner,                Civil No. 04-CV-72650-DT
                                   HONORABLE GERALD E. ROSEN
v.                             UNITED STATES DISTRICT JUDGE

BLAINE LAFLER,

       Respondent,
_____/

<u>**OPINION AND ORDER DENYING PETITION**</u>
<u>**FOR WRIT OF HABEAS CORPUS**</u>

       Keith Allan Winfield, ("petitioner"), presently confined at the Saginaw Correctional

Facility in Freeland, Michigan, seeks the issuance of a writ of habeas corpus pursuant to

28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction and

sentence on two counts of armed robbery, M.C.L.A. 750.529; two counts of assault with

intent to commit armed robbery, M.C.L.A. 750.89; and being a third felony habitual

offender, M.C.L.A. 769.11. For the reasons stated below, the petition for writ of habeas

corpus is **DENIED.**

**I. Background**

       Petitioner was convicted of the above offenses following a jury trial in the Saginaw

County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's

conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are

presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D.

Mich. 2001):

       "This case arises out of the armed robbery and attempted armed robbery of

1

four construction workers at a construction site. Defendant was arrested in the vicinity of the construction site within thirty minutes of the commission of the crimes. At the scene, the construction workers immediately identified defendant as the robber."

*People v. Winfield,* 228209, * 1 (Mich.Ct.App. March 15, 2002).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 467 Mich. 909; 654 N.W. 2d 335 (2002). Petitioner then filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* which the trial court denied. *People v. Winfield,* 99-018144-FC-5 (Saginaw County Circuit Court, March 28, 2003). The Michigan appellate courts denied petitioner leave to appeal pursuant to M.C.R. 6.508(D). *People v. Winfield,* 248166 (Mich.Ct.App. August 13, 2003); *lv. den.* 469 Mich. 1014; 676 N.W. 2d 631 (2004). Additional facts will be discussed when addressing petitioner's claims. Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Petitioner Winfield was deprived of his constitutional right to a fair trial in the state court because his court-appointed attorney failed to investigate and was ineffective in the following ways:
U.S. Const. Am. VI.

A. After raising the claim in the state district court, trial counsel failed to and omitted to raise the in field show up issue in the state circuit court, thus violating petitioner's federal due process rights under the Fifth Amendment.

B. Failed to object to the instances of prosecutorial misconduct which denied petitioner a fair trial under the Fourteenth Amendment to the United States Constitution.
U.S. Const., Am. XIV.

C. Failed to object when the state trial judge allowed the prosecutor to adduce hearsay rebuttal evidence which was not properly rebuttal evidence, thus denying petitioner a fair trial in the state court under the Fourteenth Amendment to the United States Constitution.
U.S. Const., Am. XIV.

2

D.   Failed to investigate, object to the amended motion to charge as a third habitual offender, where the state never filed the charge and allowed petitioner to plead guilty to invalid charges.

E. Failed to protect Winfield's due process rights by reasonably investigating and discovering that the money ($ 2.00) allegedly taken from one of the victims was missing from the police evidence locker.

II.  Because Petitioner had ineffective assistance of appellate counsel on appeal of right, these claims should be heard on the merits.

## II.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A federal habeas court may not find a state adjudication to

3

be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

### III.  Discussion

**Claims ## 1 and 2.  Petitioner was not deprived of the effective assistance of counsel at his trial or on direct appeal, so as to entitle him to habeas relief.**

The Court will consolidate petitioner's two claims for the purposes of judicial economy.  In his first claim, petitioner alleges the ineffective assistance of trial counsel. In his second claim, petitioner alleges that appellate counsel was ineffective for failing to raise on appeal some of the ineffective assistance of trial counsel claims that are raised by petitioner in his application for habeas relief.

A.  *Standard of Review*

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional

4

errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

    B.  *The ineffective assistance of trial counsel claims.*

    1.  <u>Failure to object to the on-scene identification procedure.</u>

Petitioner first claims that his trial counsel was ineffective for failing to move to suppress the on-scene identification of petitioner by the four victims that was conducted by the police, contending that the on-scene or field show-up was unduly suggestive and led to the misidentification of him as the suspect.

In rejecting this claim, the Michigan Court of Appeals noted that nothing in the existing record suggested that the identifications of the four victims was burdened by improper suggestiveness.  The Michigan Court of Appeals indicated further that a defendant does not have a right to counsel at a promptly conducted on-scene identification.  The Michigan Court of Appeals concluded that trial counsel was not ineffective for failing to move to suppress the on-scene identifications. *People v. Winfield,* Slip. Op. at * 2-3.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing

5

*Neil v. Biggers*, 409 U.S. 188 (1972)).  Five factors should be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199-200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive.  It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004)(citing *English v. Cody,* 241 F. 3d 1279, 1282-83 (10th Cir. 2001)(citing *United States v. Wade*, 388 U.S. 218, 240, n. 31 (1967)). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th Cir. 1992); *Johnson,* 344 F. Supp. 2d at 1090.

A number of courts have held that prompt, on-scene show-ups of suspects to witnesses are not impermissible or unduly suggestive.  Prompt on-the-scene confrontation is actually consistent with good police work and does not offend the principles established in *United States v. Wade*. *See Valtin v. Hollins,* 248 F. Supp. 2d 311, 318 (S.D.N.Y.

2003)(*quoting United States ex rel. Cummings v. Zelker*, 455 F. 2d 714, 716 (2nd Cir. 1972)).  Police officers do not need to limit themselves to police station line-ups when "[a]n opportunity for a quick, on-the-scene identification arises." *United States v. King,* 148 F. 3d 968, 970 (8th Cir. 1998).  Such on-scene identifications "are essential to free innocent suspects and to inform the police if further investigation is necessary." *Id.; See also United States ex. rel. Cummings v. Zelker,* 455 F. 2d at 716 ("prompt confrontation [is] desirable because it serve[s] to insure 'the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trial is fresh.'")(*quoting Bates v. United States*, 405 F. 2d 1104, 1106 (D.C. Cir. 1968)); *Johnson v. Dugger,* 817 F. 2d 726, 729 (11th Cir. 1987)(Immediate on-scene confrontations "[a]llow identification before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons"). [A]bsent special elements of unfairness, prompt on-the-scene confrontations do not entail due process violations." *Russell v. United States*, 408 F. 2d 1280, 1284 (D.C. Cir. 1969). Moreover, handcuffs and police custody are necessary incidents of an on-the-scene identification that do not render the pre-trial identification procedure unnecessarily suggestive. *See United States v. King,* 148 F. 3d at 970; *Tobias v. Portuondo,* 367 F. Supp. 2d 384, 392 (W.D.N.Y. 2004).  The Sixth Circuit, without extended discussion, has held that bringing crime victims immediately to the scene of the crime to identify a defendant is not impermissible or a violation of due process. *See Bruner v. Perini,* 875 F. 2d 531, 534-35 (6th Cir. 1989); *Stidham v. Wingo,* 482 F. 2d 817, 818-19 (6th Cir. 1973).     In the present case, the on-scene identification procedure was not improper.  The four victims were confronted at a construction site in Saginaw, Michigan.  The robberies or attempted

7

robberies took place at 3:00 in the afternoon over a matter of minutes. There was no indication that the lighting was bad on that day.  The victims all got a good look at their assailant.  Following the confrontation with the four victims, petitioner fled the scene on foot through a park to west of the construction site, where he climbed a fence and disappeared.  One of the victims, Brian Grandy, called the police on his cellular telephone, climbed into a construction "loader", and drove through the neighborhood attempting to locate petitioner.  On Syracuse Street, petitioner ran in front of Grandy before again disappearing.  The Saginaw Police responded to the call within five minutes and began searching for the perpetrator.  The four victims gave descriptions to the police, in which they described the perpetrator as being a tall, African-American male wearing jeans, a white coat, which may have been turned inside out, a blue shirt, and a red baseball cap. Saginaw Police discovered petitioner hiding underneath a parked car.  The officers found a red hat hidden in his jacket pocket and two dollars in the pockets in his pants.  The officers also discovered Brian Grandy's wallet, which had been taken from him during the robbery, by the tire of the car that petitioner was hiding under.  The four victims all positively identified petitioner as their assailant within twenty to thirty minutes of the robbery.  The victims identified the hat taken from petitioner as being the same one that their assailant had been wearing. One of the victims, Mark Szymanski, indicated that the two dollars which had been confiscated by the police from petitioner were folded in a similar manner as the two dollars that had been taken from him during the robbery had been folded.  Finally, the victims remained certain of their identification of petitioner being their assailant at trial.

In this case, the victims' in-court identification of petitioner as the robber was

8

sufficiently reliable to be admissible, notwithstanding the on-scene show-up procedure that was conducted, where the victims had close, face-to-face encouters with petitioner which lasted a few minutes, the victims gave reasonably accurate descriptions of the perpetrator to the police, the victims showed no uncertainty in identifying petitioner, and the show-up took place within thirty minutes of the robbery. *See Bruner v. Perini,* 875 F. 2d at 535 (Robbery victim's in-court identification of defendant as robber was sufficiently reliable to be admissible, notwithstanding police officers' exhibition of defendant to victim shortly after robbery, where victim had close, face-to-face encounter with robber, her attention was focused, she gave reasonably accurate description of robber to police, she showed no uncertainty in making the identification after the robbery, and the identification took place only about 30 minutes after the robbery).

Finally, in addition to considering the reliability of the actual identification, courts also look to other evidence to determine whether, if the identification was tainted, permitting the identification was an error of sufficient magnitude to rise to a constitutional level because of a very substantial likelihood of irreparable misidentification, or whether the error was harmless. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 848 (E.D. Mich. 2001)(internal citations omitted). In the present case, the police found petitioner hiding underneath a car shortly after the robbery. Evidence that a defendant has been hiding when he was arrested is admissible to show consciousness of guilt. *See e.g. United States v. Pallais,* 921 F. 2d 684, 689-90 (7th Cir. 1990). Petitioner's behavior in hiding underneath a parked car clearly demonstrated consciousness of guilt and provided additional untainted evidence which rendered the identifications reliable. *See e.g. Pinkney v. Keane,* 737 F. Supp. 187, 197-98 (E.D.N.Y. 1990)(evidence of defendant's guilt of

9

second-degree murder was so overwhelming as to render harmless any error in restricting defense counsel's ability to comment on the suggestive nature of the pretrial identifications of defendant as the perpetrator of robbery and in admitting eyewitness identifications; murder weapon was found in defendant's car, blood at crime scene suggested that robbery perpetrator was injured, blood from crime scene was consistent with defendant's blood and only six percent of population, but not with victim's blood, and defendant's behavior in seeking medical treatment at hospital demonstrated consciousness of guilt.). Likewise, the fact that one of the victim's wallets was found by the tire of the car where petitioner was hiding and the fact that the two dollars recovered from petitioner were folded in the same manner as the two dollars taken from one of the other victims renders any possible misidentification harmless. *See Solomon v. Curtis,* 21 Fed. Appx. 360, 363 (6th Cir. 2001)( any error in admission of victim's allegedly unreliable identification testimony was rendered harmless, in part, by the proximity of the victim's wallet and pocket lining to defendant's hiding place and the fact that the victim's keys were found in the defendant's possession). [1]

A trial counsel's failure to move to suppress an allegedly unreliable in-court identification is not ineffective assistance, absent a reasonable probability that the suppression motion would have resulted in a decision to exclude the testimony. *See Millender v. Adams,* 187 F. Supp. 2d 852, 868 (E.D. Mich. 2002); *aff'd* 376 F. 3d 520 (6th

---

[1]   While it is true that unpublished opinions carry no precedential weight, they often carry "persuasive weight." *United States v. Webber,* 208 F. 3d 545, 551, n. 3 (6th Cir. 2000).  Moreover, as one court has commented: "[T]he fact that West Group is now digesting and publishing, in its 'Federal Appendix' series, opinions not selected by the Court of Appeals for formal publication, certainly puts a new twist on just what constitutes an 'unpublished' opinion." *See In Re Park,* 275 B.R. 253, 258, n. 9 (Bankr. E.D. Va. 2002).

2:04-cv-72650-GER-VMM   Doc # 24   Filed 08/31/05   Pg 11 of 22   Pg ID 1115

Cir. 2004); *cert den.* 125 S. Ct. 1645 (2005).  In light of the fact that this Court has determined that the identification testimony in this case was admissible, petitioner has failed to show that counsel was ineffective for failing to object to the on-scene identification procedure. *Bruner v. Perini,* 875 F. 2d at 535.  Petitioner is not entitled to habeas relief on his first ineffective assistance of trial counsel claim.

　　　*2.* Failure to object to prosecutorial misconduct.

　　　Petitioner next claims that his trial counsel was ineffective for failing to object to the prosecutor attempting to shift the burden of proof in closing arguments.

　　　Respondent contends that this ineffective assistance of trial counsel claim is procedurally defaulted, because petitioner never presented this claim to the Michigan courts either on direct review or in his post-conviction proceedings and because petitioner is limited under M.C.R. 6.502 (G) to filing only one post-conviction motion, he has no available state remedies with which to exhaust this claim, thereby procedurally defaulting on this claim. *See e.g. Hannah v. Conley*, 49 F. 3d 1193, 1195-96 (6th Cir. 1995).

　　　Although the issue of whether a claim is procedurally barred should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits [of a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F. 3d 1155, 1162 (8th Cir. 1999)(internal citations omitted).  In this case, although petitioner never raised a claim that counsel was ineffective for failing to object to the prosecutorial misconduct, petitioner did raise an independent prosecutorial misconduct claim on direct appeal.  Secondly, petitioner alleges in his second claim that his appellate counsel was ineffective for failing to raise some of his ineffective assistance of trial counsel claims on his appeal of right.  In order to address

11

the merits of that claim, it will be necessary to determine the merits of the ineffective assistance of trial counsel claims which petitioner alleges should have been raised on his direct appeal. Because "the procedural default issue raises more questions than the case on the merits", this Court will assume, for the sake of resolving the claim, that there is no procedural default by petitioner and will decide the merits of the claim. *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003)(*quoting Binder v. Stegall,* 198 F. 3d 177, 178 (6th Cir. 1999).

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-1356 (6th Cir. 1993). Because this case is a habeas case and is not a direct appeal, the inquiry into this issue is less stringent. *Millender v. Adams*, 187 F. Supp. 2d at 875. When analyzing a claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper. *Boyle v. Million*, 201 F. 3d 711, 717 (6th Cir. 2000). If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. *Id.* In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra,* 4

12

F. 3d at 1355-56.

Petitioner's primary contention is that the prosecutor attempted to shift the burden of proof during closing arguments. In this case, however, the trial court instructed the jury that petitioner was presumed innocent and that the prosecutor had the burden of proving petitioner's guilt beyond a reasonable doubt. In the present case, the prosecution's argument did not deprive petitioner of a fair trial, because any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof. *See Scott v. Elo,* 302 F. 3d 598, 603-04 (6th Cir. 2002).

Petitioner also claims that the prosecutor misrepresented the facts and impeached the credibility of one of the prosecution witnesses, Aubrey Pruitt, by arguing that Aubrey Pruitt "hedged" his testimony in court because his wife is petitioner's cousin. Petitioner claims that there were no facts in the record to support the prosecutor's arguments that Aubrey Pruitt, and his wife Marcia Pruitt, who testified for the defense, fabricated a story about seeing two other men running in the area.

It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000)(internal citations omitted). In addition, the actions of a prosecutor in misrepresenting facts in evidence can amount to substantial error, because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer*, 228 F. 3d 689, 700 (6th Cir. 2000)(*quoting Donnelly v. DeChristoforo,* 416 U.S. 637, 646 (1974)). In addition, asserting facts that were never admitted into evidence may mislead a jury in a prejudicial way. *Id.* However, prosecutors must be given leeway to argue reasonable inferences from the

13

evidence. *Byrd v. Collins*, 209 F. 3d at 535.

In the present case, the prosecutor's arguments that Aubrey Pruitt was hedging his story and that both Pruitts were fabricating a story about two other suspects was a reasonable inference from the evidence. Officer Allen Rabideau of the Saginaw Police testified that Aubrey Pruitt had helped to direct the police to where petitioner was hiding, thus, supporting the inference that Aubrey Pruitt had originally known that petitioner was the actual perpetrator. Secondly, Marcia Pruitt testified at trial that she had seen two other men matching the description of the perpetrator run through the lot just before she saw petitioner in police custody. Marcia Pruitt also testified that she had given petitioner two dollars to buy her a beer about fifteen minutes prior to his arrest. However, Marcia Pruitt admitted that she had not informed the police on the day of the robbery about the observations that she had testified to in her direct testimony. In addition, it was also revealed by Pruitt on cross-examination, as well as through rebuttal testimony of Detective Marchell Turner, that Pruitt told Detective Turner the day before she testified that she had not seen anything because she was inside of her house at the time of the incident. In light of the evidence in this case, it was reasonable for the prosecutor to suggest that the Pruitts were fabricating their testimony to help petitioner. *See e.g. Bethel v. New Hampshire,* 122 F. Supp. 2d 247, 254 (D.N.H. 2000)(prosecutor's comments in closing argument, which suggested that the evidence supported an inference that the defendant's wife and another witness fabricated a story that the stabbing victim had threatened to kill the defendant, was within the range of allowable prosecutorial argument).

Because this Court has concluded that the prosecutor's remarks did not prejudice petitioner so as to deprive him of a fair trial, petitioner's claim that counsel rendered

14

ineffective assistance of counsel by failing to object to the prosecutor's remarks must also be rejected. *See Millender v. Adams,* 187 F. Supp. 2d at 876.

   3. <u>Failure to object to improper rebuttal testimony.</u>

   Petitioner next contends that his trial counsel should have objected to the introduction of rebuttal testimony from Detective Turner, which was offered in response to Marcia Pruitt's testimony. The Michigan Court of Appeals found that Turner's rebuttal testimony was proper, because it was in response to Marcia Pruitt's testimony that someone else may have committed the crime. The Michigan Court of Appeals further found the admission of the rebuttal testimony to be harmless in light of Marcia Pruitt's admission on cross-examination that she had told Turner that she had not seen anything. *People v. Winfield,* Slip. Op. at * 2. Because the rebuttal testimony was properly admitted, trial counsel was not ineffective in failing to object to its admission. *Id.* at * 3.

   In this case, the Michigan Court of Appeals' determination that Detective Turner was a proper rebuttal witness was not an unreasonable determination. "[T]he proper function of rebuttal evidence is to contradict, impeach, or defuse the impact of evidence offered by an adverse party." *United States v. Levy,* 904 F. 2d 1026, 1031 (6th Cir. 1990)(quoting *United States v. Papia,* 560 F. 2d 827, 848 (7th Cir. 1977)). Petitioner called Marcia Pruitt to testify that she had seen two other individuals running in the neighborhood at the time of the robbery and that she had given him the two dollars which was recovered from petitioner by the police. Detective Turner's testimony that Pruitt had told her the day before she testified that she had not seen anything was proper rebuttal evidence, because it tended to contradict, impeach, or defuse the impact of Pruitt's testimony. Trial counsel's failure to object to Turner's testimony did not amount to the ineffective assistance of

15

counsel, in light of the fact that Turner was a true rebuttal witness. *See Green v. Norris,* 12 F. 3d 821, 823 (8th Cir. 1993). Petitioner was also not prejudiced, because Turner's testimony was cumulative to Marcia Pruitt's own testimony that she had informed Turner the day before she testified that she had not seen anything. *Id.* Petitioner is not entitled to habeas relief on this claim.

    4. <u>Failure to object to petitioner's sentencing enhancement.</u>

Petitioner next contends that trial counsel was ineffective in failing to object to the prosecutor's amended motion to charge petitioner with being a third felony habitual offender, because the prosecutor failed to file the supplemental information which charged petitioner with being a third felony habitual offender within twenty one days of his arraignment, as required by M.C.L.A. 769.13.

The Michigan Court of Appeals rejected this claim, finding that a review of the lower court record established that the supplemental information timely notified petitioner of the prosecutor's intent to seek sentence enhancement. *People v. Winfield,* Slip. Op. at * 3-4.

A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). The presumption of correctness given to the findings of a state court on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *See Sumner v. Mata,* 449 U.S. 539, 546-47 (1981).

In the present case, the Michigan Court of Appeals found that petitioner was given proper and timely notice of the prosecutor's notice of intent to enhance sentence. Because this finding is fairly supported by the record, it is entitled to the presumption of

16

correctness. *See Borders v. Singletary,* 1996 WL 421434, * 13 (M.D. Fla. April 11, 1996).

Petitioner has failed to rebut this finding with clear and convincing evidence to the

contrary.  The only evidence that petitioner offers in support of his claim is the fact that the

notice of enhancement or proof of service was not noted on the Sagniaw County Circuit

Court's docket entries, as well as the fact that the notice placed in petitioner's file is

undated and not certified by the court's stamp.  However, petitioner was originally

arraigned in the Saginaw County Circuit Court on January 18, 2000, after he initially

waived the preliminary examination.  At his arraignment, the trial court indicated that

petitioner was to be arraigned on an information charging him with two counts of armed

robbery, two counts of assault with intent to rob while armed, one count of larceny from

a person, and a notification of being an habitual offender, third offense.  At this hearing,

petitioner's first trial counsel was allowed to withdraw and the matter was remanded to the

state district court for a preliminary examination, after petitioner refused to plead guilty.

The plea agreement had actually called for petitioner to plead guilty to larceny from a

person and being an habitual offender, in exchange for dismissal of the more serious

robbery charges.

Following remand, petitioner was again bound over to the circuit court following his

preliminary examination.  At his second arraignment on February 28, 2000, the trial court

again informed petitioner that he was being charged with underlying felony counts, as well

as a notification for being a third felony habitual offender.

In light of the fact that the trial court record establishes that petitioner received

timely notice of the prosecutor's intent to seek sentencing enhancement under the habitual

offender law, counsel was not ineffective in failing to challenge the habitual offender

charges in this case. *See e.g. Cummings v. United States,* 84 Fed. Appx. 603, 605 (6th Cir. 2003).

    5.  Failure to discover that the $ 2.00 confiscated from petitioner by police was missing from the police evidence locker.

    Petitioner lastly claims that his trial counsel was ineffective for failing to investigate and discover that the $ 2.00 that was confiscated from petitioner by the police was missing from the police evidence locker.  Petitioner claims that this evidence was exculpatory, because petitioner could have shown that these two one dollar bills did not resemble the condition of the one dollar bills that Mark Szymanski claimed had been taken from him.

    Respondent contends that this claim is procedurally defaulted, because petitioner raised it for the first time in his post-conviction motion for relief from judgment and failed to show cause for failing to raise this issue in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).

    In this case, petitioner claims that his appellate counsel was ineffective for failing to raise this claim in his appeal of right.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

    The failure of police to preserve potentially useful evidence for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of the police. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).  A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially

exculpatory evidence. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003). "[T]he mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence." *Id.* "[T]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56, n.

In the present case, any underlying due process claim would fail, because petitioner has failed to show that the police acted in bad faith in misplacing this evidence. *Malcum v. Burt,* 276 F. Supp. 2d at 683. Petitioner has also failed to show that these missing two one dollar bills were potentially exculpatory. *Id.* Even if the police acted in bad faith in failing to preserve these dollar bills, there is no due process violation where the destroyed or missing evidence "has only speculative exculpatory value." *Malcum,* 276 F. Supp. 2d at 683 (citing *United States v. Jobson,* 102 F. 3d 214, 219 (6th Cir. 1996); *Jones v. McCaughtry,* 965 F. 3d 473, 479 (7th Cir. 1992)). Petitioner has also presented no evidence to show that the police knew that these dollar bills were potentially exculpatory at the time that they investigated the crime. *Id.* Petitioner's conclusory allegations regarding the alleged destruction of potentially exculpatory material fail to establish that the police, in bad faith, destroyed any evidence with knowledge of its exculpatory value. *Id.*

Because petitioner is unable to establish a due process violation under *Youngblood,* trial counsel's failure to object to the police department's failure to preserve or retain these dollar bills as evidence was not ineffective. *See e.g. Monzo v. Edwards,* 281 F. 3d 568,

19

579-80 (6th Cir. 2002).

      C.  *The ineffective assistance of appellate counsel claims.*

Petitioner also claims that appellate counsel was ineffective for failing to raise some of the ineffective assistance of trial counsel claims on his appeal of right. Specifically, petitioner contends that his appellate counsel was ineffective for failing to raise his second, fourth, or fifth ineffective assistance of trial counsel claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F. 2d 56, 59 (6th Cir. 1990). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d at 579(internal quotations omitted). In fact, winnowing out weaker issues on appeal is actually "the hallmark of effective appellate advocacy." *Id.* (*quoting Smith v. Murray,* 477 U.S. at 536).

In this case, the Court has determined that none of petitioner's ineffective assistance of trial counsel claims have any merit. Accordingly, appellate counsel was not ineffective in failing to raise the ineffective assistance of trial counsel claims in petitioner's appeal of right. *See Alexander v. Smith,* 342 F. Supp. 2d 677, 685 (E.D. Mich. 2004).

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002). Therefore, a district court has the power to deny a certificate of appealability *sua sponte. Millender v. Adams,* 187 F. Supp. 2d at 880.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to the claims. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

21

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED***.*


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  August 31, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 31, 2005, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager